**WINDMILL POINTE VILLAGE CLUB ASSOCIATION, INC., Henry Sapinkoph, Ralph Black, Daniel Seitman, Charles Kahn, Mary Palmese, Charles Shipman, Marvin Gleiner, Joseph Scianna, Sidney Sewitch, and Louis Neimark, Plaintiffs,**

v.

**STATE FARM GENERAL INSURANCE COMPANY, Defendant.**

**No. 91–152–CIV–ORL–19.**

United States District Court, M.D. Florida.

Nov. 29, 1991.

Dennis Joseph Wall, Law Office of Dennis J. Wall, Orlando, Fla.; Paul L. Wean, Becker & Poliakoff, P.A., Maitland, Fla., Robert C. Wattles, Orlando, Fla., for plaintiffs.

Janet L. Brown, Boehm, Brown, Rigdon, Seacrest & Fischer P.A., for defendant.

## ORDER

MERHIGE, District Judge (sitting by designation).

This case was considered by the Court upon Motion of Defendant State Farm General Insurance Company ("State Farm") for Summary Judgment (Doc. No. 34, filed August 2, 1991); and, Memorandum in Opposition to State Farm's Motion for Summary Judgment by Plaintiffs Windmill Pointe Village Community Club Association, Inc., Henry Sapinkoph, Ralph Black, Daniel Seitman, Charles Kahn, Mary Palmese, Charles Shipman, Marvin Gleiner, Joseph Scianna, Sidney Sewitch, and Louis Neimark ("Windmill Pointe Village") (Doc. No. 38, filed August 14, 1991).

This case arises out of two civil actions brought before the Federal District Court for the Middle District of Florida. Plaintiffs Windmill Pointe Village have been sued as defendants in both: *Elaine Rogers, et al. v. Windmill Pointe Village Club Association, Inc., et al.,* Case Number 90–719–CIV–ORL–19 ("the *Rogers* case"); and *Williamsburg Realty, Inc. v. Williamsburg Homeowners' Association, Inc., et al.,* Case Number 90–745–CIV–ORL–19 ("the *Williamsburg Realty* case").

Plaintiffs Windmill Pointe Village originally brought this case in state court seeking a determination of whether Defendant State Farm is obligated to indemnify or defend Plaintiffs in the *Rogers* and *Williamsburg Realty* cases. This case was subsequently removed to this Court by Defendant State Farm.

Defendant State Farm moves for summary judgment in its favor on the claims asserted against it by Plaintiffs Windmill Pointe Village. Defendant State Farm argues that it is not obligated to defend or indemnify Windmill Pointe Village in either the *Rogers* or the *Williamsburg Realty* case.

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

 The law applicable to this cause was recently surveyed by Judge Fawsett in her Order granting summary judgement to defendant State Farm in the factually similar case of *Lime Tree Village Community Club Assoc. v. State Farm General Insurance Co.,* Case No. 91–93–CIV–ORL–19. The Court therefore adopts the statement of the applicable law as articulated in *Lime Tree,* and applies the same to the instant action. Under Florida law "[t]he duty to defend 'depends solely on the allegations in the complaint filed against the insured.'" *Trizec Properties, Inc. v. Biltmore Construction Co., Inc.,* 767 F.2d 810, 811 (11th Cir.1985) (citations omitted). If the complaint alleges facts which, "fairly bring the case within [the policy's] coverage," then the insurer has a duty to defend the insured. *Id.* The complaint filed in the *Rogers* case alleges violations of 42 U.S.C. § 3604 and 42 U.S.C. § 3617, and seeks a declaratory determination as to whether certain portions of the covenants, restrictions and by-laws of Windmill Pointe Village are in violation of the Fair Housing Amendment Act of 1988 and the laws of the State of Florida. The *Rogers* complaint also alleges breach of the covenants and restrictions and slander or disparagement of title resulting from the intentional, unlawful and discriminatory acts of Windmill Pointe Village.

The *Williamsburg Realty* complaint alleges violations of 42 U.S.C. § 3604 and 42 U.S.C. § 3617, and seeks a declaratory determination that the amendments and by-laws are null, void, unenforceable and in

violation of the Fair Housing Amendments Act of 1988 and the laws of the State of Florida. The *Williamsburg Realty* complaint also alleges violations of 15 U.S.C. § 1, and Florida Statutes § 542.18 by virtue of the intentional, unlawful and discriminatory acts of Windmill Pointe Village.

■ Both the *Rogers* case and the *Williamsburg Realty* case were brought pursuant to the Fair Housing Amendments Act of 1988, Title 42 United States Code § 3613. The complaints allege that Windmill Pointe Village, among others, willfully and maliciously calculated to discriminate against individuals on the basis of race and familial status by denying or making unavailable housing within their subdivisions to families with children. The plaintiffs in the *Rogers* and *Williamsburg Realty* cases claim that despite Windmill Pointe Village's knowledge that the proposed amendments would be of no lawful force, Windmill Pointe Village knowingly and willfully made and attempted to enforce an unauthorized amendment to the Declaration of Covenants and Restrictions which sought to preclude families with children from residing in the neighborhood.

Both complaints allege a series of knowing and intentional acts designed to result in discrimination based on familial status and race. Plaintiffs in both *Rogers* and *Williamsburg Realty* allege that their claims against Windmill Pointe Village resulted from those intentional acts of discrimination.

Defendant State Farm argues that the insurance contract upon which Plaintiffs bases its claims does not provide coverage for the intentional acts of the insured. The contract at issue contains the following provision for business liability coverage:

> The Company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of *bodily injury, property damage* or *personal injury* caused by

an *occurrence* to which this insurance applies.

Section II Comprehensive Business Liability, Coverage L (Doc. No. 34, Exhibit A, p. 15) (italics in original). An occurrence is defined in the contract as:

> an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured* and with respect to *personal injury,* the commission of an offense or a series of similar or related offenses.

Section II Definitions (Doc. No. 34, Exhibit A, p. 25) (italics in original).[1]

The contract further excludes from coverage: *"personal injury* arising out of any publication or utterance ... concerning any organization or business enterprise or its products or services made by or at the direction of any *insured* with knowledge of the falsity thereof." Section II Comprehensive Business Liability, Business Liability Exclusions, para. 17(b) (Doc. No. 34, Exhibit A, p. 18) (italics in original). Expected or intentional events, such as those alleged in both the *Rogers* and *Williamsburg Realty* complaints, are excluded from those for which the contract provides liability coverage.

In addition to the fact that the insurance contract does not appear to cover liability for the intentional wrongdoing of the Plaintiffs, there is a strong public policy against permitting coverage for intentional misconduct. *Northwestern National Casualty Company v. McNulty,* 307 F.2d 432 (5th Cir.1962) (public policy prohibited construction of the policy as covering liability for punitive damages); *Industrial Sugars, Inc. v. Standard Accident Insurance Co.,* 338 F.2d 673 (7th Cir.1964) (contract of insurance to indemnify person for damages resulting from his own intentional misconduct is void as against public policy). The Florida Supreme Court has also recognized that: "[i]t is axiomatic in the insurance industry that one should not be able to

1. The Court notes that the insurance contract provisions at issue in *Limetree* and in the in-

stant case are identical.

insure against one's own intentional misconduct." *Ranger Insurance Company v. Bal Harbour Club, Inc.,* 549 So.2d 1005, 1007 (Fla.1989).

■ Further, Florida's public policy specifically prohibits insurance coverage for intentional acts of discrimination. In *Ranger* the Florida Supreme Court held that "the public policy of Florida prohibits an insured from being indemnified for a loss resulting from an intentional act of religious discrimination," based upon the state's long-standing policy of opposing religious discrimination. *Ranger,* 549 So.2d at 1008, 1009.

Because both the State of Florida and the Federal government have a strong policy of opposing racial discrimination and discrimination based on age or familial status, the reasoning of the Florida Supreme Court in *Ranger* would also apply to cases such as the one *sub judice* in which the discrimination is based upon race and familial status rather than religion.

The Court finds that the losses for which Plaintiffs seek indemnification are losses resulting from their own intentional acts of discrimination. Consequently, for the above reasons, Plaintiffs are not entitled to indemnification or defense by Defendant State Farm. In this finding, the Court adopts the conclusions of law cited in Judge Fawsett's Order dated November 1, 1991, granting summary judgement to defendant State Farm in the factually similar case of *Lime Tree Village Community Club Assoc. v. State Farm General Insurance Co.,* Case No. 91–93–CIV–ORL–19. Because Defendant State Farm is entitled to a judgment as a matter of law, Defendant's Motion for Summary Judgment (Doc. No. 34) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant State Farm in accordance with this Order.

DONE AND ORDERED.