**LIME TREE VILLAGE COMMUNITY CLUB ASSOCIATION, INC., et al. Plaintiffs–Appellants,**

v.

**STATE FARM GENERAL INSURANCE COMPANY, Defendant–Appellee.**

No. 91–4133.

United States Court of Appeals, Eleventh Circuit.

Jan. 8, 1993.

---

Dennis J. Wall, Orlando, Fla., for plaintiffs-appellants.

Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Janet L. Brown, Janice A. Kelly, Orlando, Fla., for defendant-appellee.

Before FAY and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

FAY, Circuit Judge:

Lime Tree Village Community Club Association, appellants/plaintiffs, appeal an order of the United States District Court for the Middle District of Florida granting summary judgment for State Farm General Insurance Co., 785 F.Supp. 962. Lime Tree sued State Farm for declaratory relief and damages due to breach of contract and insurer bad faith, alleging State Farm failed to indemnify and defend Lime Tree in two underlying suits. The district court found Lime Tree's losses in the suits resulted from their own intentional acts of discrimination, and that those losses were excluded under the policy. The court, therefore, held Lime Tree was not entitled to indemnification or defense by State Farm. For the reasons that follow, we hold State Farm has a duty to defend under the insurance policy.[1] We VACATE and REMAND for new proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lime Tree Village is a residential development with a homeowner's association. The appellants/plaintiffs, defendants in the underlying suits, are the Lime Tree Village Club Association and individuals who held positions at various times as officers and directors of the Association (hereinafter "Lime Tree"). The original Declaration of Covenants and Restrictions of the development limited occupancy in Lime Tree Village to adults and children age 16 or over. After Congress passed the Fair Housing Amendments Act of 1988, Lime Tree proposed and drafted an amendment to the Covenants and Restrictions that limited the community to adults age 55 or over. The amendment passed by referendum and Lime Tree recorded it in the records of Orange County, Florida. Shortly thereafter, several homeowners filed suit to object to the change in the age restriction. State Farm initially defended Lime Tree, but later withdrew the defense and denied all coverage. The present suit ensued.

Lime Tree brought suit in Florida's circuit court seeking a determination of whether State Farm was obligated to indemnify or defend Lime Tree in the underlying cases of *Bradley v. Lime Tree Village Community Club Association,* Case Number 91–93–CIV–ORL–18 (the *"Bradley"* case) and *Williamsburg Realty v. Williamsburg Homeowners' Association,* Case Number 90–745–CIV–ORL–18 (the *"Williamsburg"* case). State Farm subsequently removed the case to federal court and moved for summary judgment arguing that the insurance contract upon which Lime Tree bases its claims excludes coverage for the intentional acts of the insured.

### 1. The Insurance Policy

The State Farm policy affords Lime Tree two separate forms of coverage: (1) Comprehensive Business Liability insurance and (2) Directors and Officers Liability insurance. The Comprehensive Business Liability coverage reads, in pertinent part, as follows:

> abused its discretion by denying remand and declining to abstain following removal. Because we hold State Farm has a duty to defend as a matter of law, these arguments warrant no discussion.

---

1. Lime Tree also contends the district court erred on the basis that (1) genuine issues of material fact were presented on State Farm's motion, (2) the court clearly erred under Fed. R.Civ.P. 52(a) in factually finding Lime Tree "intentionally discriminated," and (3) the court

**COVERAGE L—BUSINESS LIABILITY**

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or **personal injury** caused by an **occurrence** to which this insurance applies....

[O]ccurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured and with respect to personal injury, the commission of an offense or a series of similar or related offenses....

[P]ersonal injury means an injury which arises out of one or more of the following offenses committed in the conduct of the named insured's business ...

2. the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy ...

3. wrongful entry or eviction, or other invasion of the right of private occupancy.

**BUSINESS LIABILITY EXCLUSIONS**

Under Coverage L, this policy does not apply ...

16. to personal injury arising out of the willful violation of a penal statute or ordinance....

Lime Tree paid an additional premium for Directors and Officers Liability insurance, which provides the following coverage:

**OPTION DO—DIRECTORS AND OFFICERS LIABILITY**

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of **wrongful acts** committed by the insured solely in the conduct of its management responsibilities for the condominium/association....

"[W]rongful acts" means any negligent acts, any errors, any omissions, or breach of duty directly related to the operations of the condominium property of the named insured.

**Exclusions**

This insuring agreement does not apply:

1. to any dishonest, fraudulent, criminal or malicious act ... [or]

7. to violation of any civil rights law ... including ... discrimination on account of race, religion, sex or age...."

Under both types of coverage, State Farm expressly assumed the duty to defend any claim or suit seeking damages payable under the policy, "even though the allegations of the suit may be groundless, false, or fraudulent."

*2. The Underlying Suits*

The complaints filed in the *Bradley* and the *Williamsburg* cases each contain multiple claims and several similar allegations. The plaintiffs in *Bradley* set forth six claims. Counts I and II allege discrimination by Lime Tree in violation of 42 U.S.C. §§ 3604 and 3617. Count III alleges Lime Tree breached the Covenants and Restrictions because the original declaration provided that the age restriction could never be amended.[2] Counts IV and V request a declaratory determination that the restrictions of Lime Tree Village are null, void, and unenforceable under federal and state law. In Count VI the plaintiffs allege Lime Tree falsely and maliciously slandered or disparaged title to their properties and rights.

---

**2.** Article II, paragraph 2, of the Lime Tree Declaration of Covenants and Restrictions originally provided:

In recognition of the fact that The Property is being developed for the enjoyment, comfort, convenience and accommodation of adult persons, occupancy of each and every Dwelling Unit shall be and is hereby restricted to adults with whom no dependent children under the age of sixteen (16) years reside.

Article V, paragraph 2, of the Declaration goes on to prohibit any amendment to the above:

At any time, the Owners of Record of at least two-thirds (⅔) of the Lots may change these Covenants in whole or in part.... *This provision shall not apply, however, as it pertains to requirements of Article II, Paragraph 2, relating to the requirements of an Adult Community.* (Emphasis added.)

The *Williamsburg* complaint sets forth five claims. Counts I, II, and III allege discrimination and request declaratory relief upon substantially the same basis as the *Bradley* complaint. Counts IV and V allege restraint of trade in the market of private occupancy, purchase, and ownership of residential real property in violation of federal and state law.

The general allegation section of the *Bradley* and the *Williamsburg* complaints alleges that Lime Tree committed these acts knowingly and intended the results of their actions. These general allegations are realleged and incorporated by reference throughout the individual counts of both underlying complaints.

### 3. The District Court Ruling

The district court found the underlying complaints alleged damages caused by a series of knowing and intentional acts, designed by Lime Tree to result in discrimination based on familial status and race. The district court reasoned that Lime Tree's losses in the underlying suits flowed from those intentional acts and were excluded under the Business Liability coverage. Reading the *Bradley* and *Williamsburg* complaints in light of the insurance contract, the court thus held State Farm had no duty to indemnify or defend Lime Tree.

## II. DISCUSSION

■ We review the district court's determination and application of Florida law in a summary judgment ruling de novo. *Salve Regina College v. Russell,* —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190, 198 (1991).

■ The principles governing this case are well-established in Florida and this circuit. An insurer's "duty to defend is distinct from and broader than the duty to indemnify ... and if the [underlying] complaint *alleges facts showing two or more grounds for liability,* one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So.2d 810, 813–14 (Fla. Dist.Ct.App.1985) (citations omitted) (em-

phasis added). The duty to defend is determined by examining the allegations in the complaint filed against the insured. *National Union Fire Insurance Co. v. Lenox Liquors Inc.,* 358 So.2d 533, 536 (Fla.1978). The insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage. *Trizec Properties Inc. v. Biltmore Const. Co.,* 767 F.2d 810, 811–12 (11th Cir.1985); *Baron Oil,* 470 So.2d at 815. If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured. *Trizec Properties,* 767 F.2d at 812; *Baron Oil,* 470 So.2d at 814.

State Farm argues there is no duty to defend here because the underlying complaints allege only intentional acts and the Business Liability provision excludes intentional acts of the insured. To support the argument, State Farm points 1) to allegations made throughout the underlying complaints that Lime Tree committed a series of knowing and intentional acts designed to result in discrimination and 2) to the fact that every count incorporates by reference the allegedly intentional, unlawful and discriminatory acts of Lime Tree. State Farm further argues that the predicates for those counts not expressly alleging discrimination are "merely creative ways" to essentially allege violations of state and federal anti-discrimination laws. This argument presumably rests upon the exclusions contained in the Directors and Officers coverage.

■ The arguments are unavailing for two reasons. First, the duty to defend turns on the "grounds for liability" expressed by "allegations of fact" in the underlying complaints. *Baron Oil,* 470 So.2d at 813–14. The factual allegations set forth grounds, other than intentional acts and discrimination, upon which Lime Tree could be held liable. This is not a case where there is only a single cause of action based wholly on acts expressly excluded by the policy. *Cf. Baron Oil,* 470 So.2d at 815 (insurer's duty to defend terminated when the amended complaint clearly reflected

that the plaintiff's entire claim was based on events falling within the policy exclusion). Based on the allegations here Lime Tree could be held liable, for example, for unintended slander of title [3] and unintended restraint of trade. Second, even if the counts are "merely" creative discrimination claims, the factual allegations triggered the duty regardless of the label State Farm would like to attach to the cause of action. State Farm urges the court to characterize all the underlying claims as allegations of discriminatory actions, excluded from the policy as either intentional acts or violations of civil rights laws. The court cannot speculate as to the nature or merit of the claims; it may only look to the factual allegations of the underlying complaint. If the facts alleged show any basis for imposing liability upon the insured that falls within policy coverage, the insurer has a duty to defend.

In this case the Directors and Officers insurance covers "wrongful acts," including any error, omission or breach of duty directly related to the operations of the property. The policy excludes malicious acts and acts in violation of civil rights law. The claims for slander or disparagement of title and breach of Covenants and Restrictions in *Bradley*, as well as the two restraint of trade claims in *Williamsburg*, do not fall within the exclusion and are "wrongful acts" as defined by the policy because the underlying plaintiffs need not prove intent to prevail against Lime Tree on any of these claims. Based on the facts alleged in the complaints, if the suits had proceeded to trial, the Lime Tree officers and directors could have been found, not to

have acted maliciously or in violation of any civil rights law, but to have committed an error or a breach of a duty in passing and recording the amendment to the Covenants and Restrictions. State Farm's duty to defend arises because the factual allegations provide a potential basis for holding Lime Tree liable that is covered under the Directors and Officers Liability insurance. State Farm, therefore, has a duty to defend Lime Tree until all covered claims have been removed from the complaints. *See Baron Oil,* 470 So.2d at 815.

State Farm could also fairly and potentially be required to indemnify, as well as defend Lime Tree under Comprehensive Business Liability coverage.[4] The Business Liability provision insures Lime Tree against personal injury claims arising from the publication of slander or other disparaging material, or from an invasion of the right of private occupancy. The policy expressly excludes personal injury claims caused by the insured's willful violation of a penal statute or ordinance by the insured, and claims based upon expected events or intentional acts as measured from the standpoint of the insured.[5]

The *Bradley* complaint sets forth grounds of liability which potentially, if not clearly, fall within the Business Liability coverage and are not excluded by the policy. First, the complaint alleges Lime Tree maliciously slandered or disparaged the plaintiffs' title to their properties by declaring to third parties that "[p]laintiffs have no right to sell or lease their properties to families with children or any family without a member [over the age of 55]." Since Florida law does not require proof of intent

---

3. In an action for slander or disparagement of title, a Florida plaintiff must prove the defendant made a false and malicious statement disparaging the plaintiff's title to real or personal property, or some other right, causing special damage. *Brown v. Kelly,* 545 So.2d 518, 520 (Fla.Dist.Ct.App.1989). "Malice" however merely means a "lack of legal justification" and is "presumed" if the plaintiff establishes a prima facie case and if the defendant does not raise a privilege defense. *Gates v. Utsey,* 177 So.2d 486, 488 (Fla.Dist.Ct.App.1965).

4. The District Court, in ruling that State Farm had no duty to defend under the Business Lia-

bility coverage, relied in part on an exclusion for personal injury arising out of any publication or utterance "concerning any organization or business enterprise or its products or services made by or at the direction of any insured with knowledge of the falsity thereof." The exclusion is inapplicable here because there was no allegation that Lime Tree made any publication or utterance "concerning any organization or business enterprise."

5. See "Coverage L—Business Liability" and the definition of "occurrence" above.

 

for the plaintiffs to prevail on this claim, the allegation on its face claims damages for personal injury due to the publication of a slander; an occurrence falling within policy coverage. Second, in the claim for breach of the Covenants and Restrictions the plaintiffs allege that "[b]y virtue of the actions aforesaid, [Lime Tree] breached or attempted to violate the Covenants and Restrictions." Even assuming "actions aforesaid" refers to allegations of intentional misconduct, the claim does not say Lime Tree intended to cause the plaintiffs' harm. That Lime Tree intentionally passed the amendment does not foreclose the possibility that Lime Tree could have unintentionally breached the Covenants while attempting to comply with the Fair Housing Amendments Act. In such a case, Lime Tree would be clearly indemnified under the Business Liability coverage and State Farm's duty to defend arises.

The *Williamsburg* complaint also alleges grounds for holding Lime Tree liable that fall within the Business Liability coverage. The plaintiffs there allege Lime Tree "contracted, combined and/or conspired for the purpose and with the effect of imposing an unreasonable restraint on trade" in the market of private occupancy, purchase, and ownership of residential real property. Although "contracted" or "conspired" could imply intentional conduct insofar as these are volitional acts, these Counts do not directly allege Lime Tree intended the result, that is to intentionally or maliciously restrain trade. Providing Lime Tree with the benefit of any doubt, *Trizec Properties*, 767 F.2d at 812, *Baron Oil*, 470 So.2d at 814, these allegations potentially fall within the policy coverage as damages arising from an unintended invasion of the right of private occupancy.

State Farm's obligation to defend arises because the underlying complaints allege facts which provide grounds for holding Lime Tree liable that do not fall clearly within an exclusion, yet which fairly and potentially bring the cases within either the Directors and Officers Liability or the Business Liability coverage. While our conclusion is that the duty to defend was upon State Farm, we express no opinion as to whether or not the plaintiffs in the underlying cases are entitled to recover or whether or not, if there be recoveries, State Farm is required to indemnify.

## III. CONCLUSION

For the reasons set forth above, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.